IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RAY LOY,

        Petitioner,

v.                                         Civil Action No. 1:13-CV-117

EVELYN SEIFERT,

        Respondent.

## REPORT & RECOMMENDATION

## I. INTRODUCTION

On March 28, 2013, Ray Loy ("Petitioner") filed a petition pursuant to 28 U.S.C. § 2254 challenging his state court conviction in Hancock County, West Virginia. Petitioner also filed a Motion for Leave to File Excess Pages, which included twelve typewritten pages constituting supporting facts for each alleged ground in the petition. On April 30, 2013, this Court granted Petitioner's motion to file excess pages and ordered Respondent to show cause why the petition should not be granted. On July 24, 2013, Respondent responded to the order to show cause by filing a motion to dismiss the petition as untimely. By Report and Recommendation issued July 26, 3013, the undersigned found that the petition was timely, denied Respondent's motion to dismiss, and ordered Respondent to answer the petition. On November 1, 2013, Respondent filed a second motion for summary judgment. The Court then issued a *Roseboro* notice informing Petitioner of his right to file responsive materials. On December 9, 2013, Petitioner timely responded, and on January 6, 2014, Petitioner filed a second motion for summary judgment.

### A. Factual Background

On May 19, 2007, police, acting on a report of illegal activity, obtained a search warrant and seized photographs, VHS tapes, computer equipment, compact discs, floppy disks, and a secret videotaping system from Petitioner's residence. (Doc. 52-5, 64-3) Some of these items revealed evidence of underage girls in various stages of undress. (Doc. 52-5) On September 12, 2007, a Hancock County Grand Jury returned a five count indictment charging Petitioner with sexual assault in the second degree, use of a minor to produce obscene matter and to do sexually explicit conduct, and possession of material depicting minors engaged in sexually explicit conduct. (Doc. 64-3) The Hancock County Circuit Court appointed attorney James Carey to represent Petitioner in that criminal action. (Doc. 52-2, 64-3) On November 14, 2007, Petitioner was also named in a federal indictment in the United States District Court for the Northern District of West Virginia, in which he was charged with twenty counts of production of child pornography. (Doc. 64-3) Federal public defender Brendan Leary was appointed to represent Petitioner in the federal criminal case. The federal and state charges were based on the same evidence and conduct. (Doc. 64-3)

Plea negotiations were conducted between the federal and state prosecutors and Petitioner's federal and state defense attorneys in an attempt to craft a global plea agreement disposing of both the state and federal case. (Doc. 52-2) At some point in late 2007, Petitioner and his attorneys became aware that the search warrant underlying the seizure of evidence in these companion cases possibly violated Rule 41(c) of the West Virginia Rule of Criminal Procedure[1] because it did not include a properly executed affidavit. (Doc. 52-2) However, the federal prosecutor made it clear to

---

[1] Rule 41(c) reads, in pertinent part, "A warrant shall issue only on an affidavit or affidavits sworn to before the magistrate or a judge of the circuit court and establishing the grounds for issuing the warrant.... Before ruling on a request for a warrant the magistrate or circuit judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses the affiant may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit."

Petitioner's defense attorneys that Petitioner filing a motion to suppress in state court would preclude such a global plea agreement. (Doc. 52-2, 64-2) Because Petitioner faced a much harsher sentence in federal court than in state court, Petitioner's attorneys agreed that disposing of the case in state court would be preferable. (Doc. 52-2)

Before a global plea agreement could be reached, Petitioner requested new state counsel, and in January of 2008, Mr. Carey was replaced by attorney Randy Gossett. (Doc. 52-2) In March of 2008, a global plea agreement was reached between all parties. (Doc. 52-2) On March 18, 2008, a plea hearing was held where Petitioner was to plead guilty to the state charges in return for a dismissal of the federal indictment. However, at that hearing, Petitioner instead informed the court that he would not plead guilty and instead wanted to file a motion to suppress evidence. (Doc. 52-2, 52-5) As a result, the State orally moved the Court to dismiss the State case against Petitioner without prejudice so that it could obtain a superseding indictment against Petitioner based on additional information discovered during the federal investigation. The Court granted this motion over Petitioner's objection. (Doc. 52-2, 52-5)

Three days later, on March 21, 2008, Petitioner, through attorney Leary, filed a motion to suppress in the federal case alleging that the search warrant discussed above violated the Fourth Amendment. (Doc. 53-1) On April 8, 2008, the Hancock County Grand Jury returned a thirteen count superseding indictment charging Petitioner with sexual assault in the second degree, use of a minor to produce obscene matter and to do sexually explicit conduct, and possession of material depicting minors engaging in sexually explicit conduct. (Doc. 52-5) Mr. Gossett was once again appointed to represent Petitioner, and Petitioner once again requested that Mr. Gossett file a motion to suppress in state court. (Doc. 52-2, 64-2) With the federal charges still pending, the parties

resumed plea negotiations in an attempt to resolve the case at the state level. According to the testimony of Petitioner's attorneys, the federal prosecutor's plea offers were rejected by Petitioner because they contemplated Petitioner serving at least 21 years. (Doc. 52-2) Additionally, the federal prosecutor informed Mr. Gossett that should Petitioner file a motion to suppress in state court, there would be no plea deal in federal court. On April 21, 2008, United States Magistrate Judge Seibert issued a recommendation that Petitioner's motion to suppress be denied. (Doc. 52-5) Shortly thereafter, Petitioner moved the federal court to relieve Mr. Leary and appoint new counsel. (Doc. 52-2) The court appointed attorney Robert McCoid to represent Petitioner in the federal case, and Mr. McCoid filed objections to Magistrate Judge Seibert's recommendation. However, on July 16, 2008, just thirteen day before the federal trial, United States District Court Judge Stamp orally affirmed and adopted Magistrate Judge Seibert's recommendation and denied Petitioner's motion to suppress. Additionally, Judge Stamp orally denied any further requests for continuance and directed that the federal trial would go forward as planned on July 29, 2008. (Doc. 52-3.)

On July 18, 2008, Mr. McCoid's partner, attorney John Pizzuti, met with Petitioner at the Northern Regional Jail and presented him with a global plea agreement. (Doc. 52-2) Under the terms of the agreement, Petitioner would plead guilty to an information in state court charging him with ten counts of the use of minors in filming sexually explicit conduct. The agreement contemplated that Petitioner would serve the maximum possible sentence of 18.5 years on a determinate 37 year sentence. In return for his guilty plea, the State would dismiss the pending state case and not file any pleadings alleging that Petitioner was a habitual offender. In addition, the federal prosecutor would dismiss the pending federal case. The agreement was signed by Mr. McCoid. (Doc. 52-9) On July 24, 2008, Petitioner appeared in the Hancock County Circuit Court with his federal attorney, Mr.

McCoid, for a plea and sentencing hearing. (Doc. 52-1) After a detailed plea colloquy conducted by the Court, the Court found that Petitioner fully understood the rights he was giving up by pleading guilty and found that he knowingly and intelligently waived those rights. (Doc. 52-1, 52-8) The Court accepted the plea agreement and Petitioner's guilty plea to all counts in the information. On August 14, 2008, the Court issued a sentencing order reflecting the above. (Doc. 52-1, 52-10) Petitioner did not file a direct appeal of his conviction.

### B. State Habeas Proceedings

On March 19, 2009, Petitioner filed a *pro se* petition for state post-conviction relief in the Circuit Court of Hancock County. (Doc. 1-3) The state habeas court appointed counsel, who filed an amended petition on August 17, 2011, alleging the following grounds of relief:

1. Petitioner entered into the plea agreement under factual duress and as a result of perceived coercion.

2. The State search warrant was invalid because it was not issued by a neutral and detached magistrate and because it was based on lies and unsworn statements.

3. Petitioner received ineffective assistance of counsel throughout the proceedings.

4. The State failed to disclose exculpatory evidence.

5. The Court should have inquired into whether the search warrant was valid.

6. There was insufficient evidence to convict Petitioner.

The state habeas court held an omnibus evidentiary hearing on August 18, 2011. By order entered October 27, 2011, the state habeas court denied the petition for relief. (Doc. 1-3) On November 18, 2011, the petitioner, by counsel, filed a petition for appeal with the West Virginia Supreme Court of Appeals. The appeal assigned the following errors:

1. Involuntary plea agreement;

2.      Unlawful search and seizure;

3.      Ineffective assistance of counsel;

4.      Failure of prosecution to disclose exculpatory evidence;

5.      Failure of trial court to inquire into validity of search warrant;

6.      Insufficient evidence to convict.

The WVSCA denied Petitioner's appeal by memorandum decision issued on February 11, 2013. (Doc. 52-5) The instant petition followed.

### C. Petitioner's Federal Habeas Corpus Claims

In his petition for habeas corpus relief, Petitioner raises the following grounds for relief: (1) involuntary plea agreement; (2) ineffective assistance of trial and habeas counsel; (3) unlawful search and seizure; and (4) cumulative error.

### D. Respondent's Motion for Summary Judgment

Respondent contends that (1) the petition should be dismissed because Petitioner inadequately pled his grounds for relief; (2) Petitioner's claim of unlawful search and seizure is not cognizable because he was provided a full and fair opportunity to litigate the legality of the search both at trial and in his state habeas proceeding and because he waived any issues relating to his rights under the Fourth Amendment by pleading guilty; (3) Petitioner's claim of ineffective assistance of habeas counsel is not exhausted; and (4) the State habeas court correctly applied federal law in adjudicating Petitioner's claims of ineffective assistance of trial counsel and involuntary plea agreement.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. *Walker v. True*, 399 F. 3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S.41, 45-46 (1957). Additionally, a district court should construe *pro se* petitions liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (emphasizing the liberal construction rule for *pro se* complaints raising civil rights issues).

### B. Motion for Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In viewing the motion for summary judgment, the Court must do so under the constraints imposed by the habeas statue. Under § 2254, this Court may not grant federal habeas relief unless it concludes that West Virginia's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States." 28 U.S.C.A. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 405. A state court decision "involves an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), if the state court decision "identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id*. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" for habeas relief to be granted. *Id*. at 411.

As these principles make clear, § 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts:

> [Section 2254(d) ] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there

was an error well understood and comprehended in existing law
beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011). A habeas petitioner proceeding under § 2254

bears the burden of showing that he is entitled to habeas relief under this highly deferential standard.

Finally, determination of factual issues by the state court are presumed to be correct, and the

petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28

U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its

reasoning with some care, it should be particularly difficult to establish clear and convincing

evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir.2010). This

standard "reflects Congress's view that there is no reason for a do-over in federal court when it

comes to facts already resolved by state tribunals." *Id.* Accordingly, courts should not "casually cast

aside a state court's factual findings. *Id.*

### III. DISCUSSION

*A. Sufficiency of Petition*

Respondent devotes a substantial portion of her motion on the contention that Petitioner

failed to adequately plead his grounds for relief. Respondent asserts that the petition violates Rule

2(c) of the Rules Governing Section 2254 Cases[2], which describes the form a federal habeas petition

must take. In his petition, Petitioner states each ground for relief and then states "see attached brief."

Attached to the petition are several exhibits, including Petitioner's WVSCA brief. Respondent

contends that the attached brief to which Petitioner refers "is actually petitioner's state habeas

---

[2]Rule 2(c) states that a habeas petition must "(1) specify all the grounds for relief available to the petitioner;
(2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly
handwritten; and (5) be signed under penalty of perjury by the petitioner or person authorized to sign it for the
petitioner under 28 U.S.C. § 2242." Rules Governing Section 2254 Cases, Rule 2(c).

appellate brief." However, Respondent apparently overlooked the supplement Petitioner was granted leave to file in addition to his petition. This Court granted Petitioner's Motion for Leave to File Excess Pages, which specifically seeks "leave to file his grounds arguments in attached pages in excess of the allowed five pages." (Doc. 5) Attached to the motion are twelve typewritten pages outlining in detail the facts supporting Petitioner's grounds for relief. Petitioner's habeas petition, when considered in conjunction with this supplement, clearly satisfies the Rule 2(c) pleading requirements. Accordingly, the Court will turn to the substantive merits of the parties claims.

**B. Involuntary Plea Agreement**

"It is well-established that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." *Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1294 (4th Cir. 1992); *Tollett v. Henderson*, 411 U.S. 258, 267. In general, "once judgment on a plea is final, collateral inquiry for constitutional claims that occurred prior to the entry of the guilty plea is generally limited to whether the plea itself was knowing and voluntary." *Slavek v. Hinkle*, 359 F.Supp.2d 473, 481 (E.D.Va. 2005). Thus, because several of Petitioner's claims may be foreclosed if his guilty plea was voluntary and intelligent, the Court will address this issue first.

Petitioner asserts that he entered into the plea agreement under duress and as a result of coercion. Specifically, he alleges that he was threatened and coerced into pleading guilty to the state charges because his attorneys erroneously informed him that he was facing a life sentence in federal court if he refused to take the plea in state court. Petitioner contends that he was visited by Mr. McCoid's associate, Mr. Pizzuti, an attorney he had never met, to go over the proposed plea agreement, and Mr. Pizzuti refused to answer his questions about the plea agreement. He asserts that

he was given only a few days to consider the terms of the plea agreement, and that during this time he was unable to contact his state defense attorney, Mr. Gossett, to ask him questions about the plea. Petitioner also contends that when he expressed trepidation about pleading guilty, Mr. Pizzuti and Mr. McCoid told him that he must answer all of Judge Gaughan's questions shortly and directly because if Judge Gaughan sensed any trepidation, he would reject the plea and Petitioner would go immediatel

y to trial in federal court, where he was facing a life sentence. He also alleges that he did not know the ramifications of his plea, especially with regard to collaterally challenging the search and seizure of evidence in his case.

The state court found that Petitioner had full knowledge of the consequences of his guilty plea, including the fact that he was waiving further review of the search warrant. The state court further found that, while it was true that Petitioner was under pressure to enter into the plea agreement quickly because the federal trial was starting in a week, this is not the type of coercion that must be present to set aside a guilty plea. Accordingly, the state court found that Petitioner knowingly and intelligently entered into a plea of guilty to all ten counts of the information and that he was not under duress or coercion when he entered into the plea agreement.

"The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.....In applying this standard, courts looks to the totality of the circumstances surrounding the guilty plea...granting the defendant's solemn declaration of guilt a presumption of truthfulness." *Beck v. Angelone*, 261 F.3d 377, 394 (4th Cir. 2001) (internal citations ommitted). "A plea may be involuntary if the defendant does not understand the nature of the constitutional rights

he is waiving, or unintelligent if the defendant does not understand the charges against him." *Id*.

"Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1299 (4th Cir.), *cert. denied*, 506 U.S. 885 (1992). And, "findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea." *United States v. Lambey*, 949 F. 2d 133, 137 (4th Cir. 1991) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). In light of these standards, the undersigned finds that the state court's adjudication of this issue is not contrary to clearly established federal law, nor is it an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Before accepting Petitioner's guilty plea, the trial court conducted an exhaustive plea colloquy with Petitioner concerning the voluntariness and intelligence of the guilty plea. (Doc. 52-1) Petitioner's replies to the trial court's questions clearly and fully indicated that he understood the charges against him, the terms of the plea agreement, and the consequence of his guilty plea. Petitioner further acknowledged that he had met with his attorney "quite a few" times and that he was satisfied with the services of his attorney. Petitioner also stated that his attorney answered all of his questions concerning possible defenses to the crimes charged and the plea agreement itself. The trial court also discussed with Petitioner all of the consequences of his guilty plea. Most significantly, with regard to Petitioner's right to challenge the state's evidence against him, the following exchange took place:

> THE COURT: And you have the right to challenge in the trial court, and that would be in front of me and on appeal, all pretrial proceedings. So if you believe the state has violated your constitutional rights in gathering evidence against you or detaining you, you would have the right to bring that to my attention. And if I

ruled against you, you would have the right to appeal those same matters to the Supreme Court. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If you enter this guilty plea you're giving up that right. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And you have the right to move to suppress illegally obtained evidence and illegally obtained confessions. If you enter the plea you will be giving up this right. Do you understand that?

THE DEFENDANT: Yes, sir.

(Doc. 52-1 at 20-21) Finally, the state prosecutor outlined the evidence against Petitioner, and Petitioner acknowledged that he was in fact guilty of the crimes charged in the information.

Despite his representations to the trial court that he understood the charges against him and the consequences of his guilty plea, Petitioner now contends that he only made those representations because Mr. McCoid and Mr. Pizzuti told him to convince the trial judge that he wanted to take the plea. He also asserts that he was confused and scared, but that Mr. Gossett was unavailable to take his questions. However, absent clear and convincing evidence to the contrary, Petitioner is bound by his representations at the plea hearing. Petitioner presents no evidence to substantiate his allegations.

Moreover, the record reveals that Petitioner was fully aware of the charges against him and the consequences of his guilty plea. Mr. Gossett testified that he "repeatedly" discussed with Petitioner the consequences should he be tried in federal court. (Doc. 52-2 at 108) Mr. Gossett also testified that this second plea agreement was essentially the same as the first plea agreement, which Petitioner refused to accept, and that Petitioner was fully apprised that he was waiving his right to

challenge the validity of the state's search warrant.(Doc. 52-2 at 111-112) Further, a review of Mr. McCoid's testimony reveals that, contrary to Petitioner's assertions, Petitioner was actually quite involved in the plea negotiations being conducted between the state and federal prosecutors and defense attorneys. Mr. McCoid testified at length about the plea negotiation process. Mr. McCoid stated that Petitioner made it very clear that he did not want to stand trial in federal court, but that the federal prosecutor's proposed plea agreement terms included more time than Petitioner was interested in serving. (Doc. 52-2 at 163) Mr. McCoid also outlined all of the considerations he discussed with Petitioner regarding the benefits of pleading guilty in state court rather than pleading guilty in federal court. When asked if he thought Petitioner was confused about the plea agreement he was signing, Mr. McCoid stated as follows:

> I mean, frankly, he thought he was getting screwed. But he did not–he did not–it was not my impression that Mr. Loy thought that the agreement meant anything than exactly what it says. I mean, he knew what he was signing. It was explained very thoroughly to him. It's my strong sense that Mr. Loy is an intelligent man, he is sophisticated to the extent of being involved in the criminal justice system before. He was doing some of his own research and he was very engaged in his own defense, and he was very cognizant of what he was signing.

(Doc. 52-2 at 183-84) And, when asked if Petitioner understood that he was waiving his right to challenge the search warrant, Mr. McCoid testified as follows:

> A. Yes. Mr. Loy understood–particularly against the backdrop of our prior discussions about interlocutory appeals and challenging the validity of the search warrant, he understood that by entering the plea–I mean, completely independently of anything that Judge Gaughan said to him, the plea colloquy concerning waiver of appellate rights–he clearly understood that by signing on the dotted line he was waiving any defects in the initiation of the prosecution, any suppression issues, those were gone forever.
>
> Q. An additionally on the upside, he was getting rid of all this

> baggage, federal baggage and some of the state baggage?
>
> A. That's why he did. He agreed to do it because he knew pursuant to our discussions with [the federal prosecutor] that if he pled on the state court charge to an amount of time that was satisfactory to both the United States Attorney's Office and [the state prosecutor], that the entirety of the federal indictment would be dismissed, including it would eliminate all the uncertainty about what his potential sentence would be because of our collective inability to manipulate what the sentence would be.

(Doc. 52-2 at 184-85) Finally, Mr. McCoid testified about a letter he received from Petitioner approximately two weeks after the plea hearing. In the letter, Petitioner wrote, "Thanks for all you done....I know my case is done...Thanks, Ray."(Doc. 52-2 at 218)

Finally, while it is certainly true that Petitioner's attorneys advised him that he would be facing a federal trial and a potential life sentence if he refused to plead guilty to the state court information, this fact does not compel a conclusion that Petitioner's plea was coerced or threatened.[3] *See Brady v. United States*, 397 U.S. 742, 750-51 (holding that a guilty plea is not coerced even if it is compelled, to a certain extent, "by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged"). As the state court

---

[3]Petitioner alleges numerous times throughout his pleadings that his attorneys' advice regarding a potential life sentence in federal court was erroneous. He bases this on the fact that at one point, the federal prosecutor offered him a plea agreement under which he would serve approximately 21 years, which Petitioner notes is only 2.5 more years than he is serving under the state plea agreement. However Petitioner fails to realize that by the time the final plea agreement in state court was finalized, a plea agreement in federal court was entirely off the table. Petitioner was going to trial in one week, where he faced twenty separate charges. Moreover, as Mr. McCoid testified to during the omnibus hearing, because of Petitioner's prior conviction for similar charges, he was facing a federal sentencing guideline range of up to life in prison. One of the benefits of taking the state plea was the ability for Petitioner's attorneys to have more control over exactly what sentence Petitioner received. Finally, Petitioner's attorneys advised Petitioner that he was potentially facing a life sentence in federal court as a way to impress upon him the necessity of keeping the case in state court, *i.e.* as a reason not to file the motion to suppress. This advice was accurate because the federal prosecutor advised Petitioner's attorneys that if the evidence was suppressed in state court, there would be no deal in federal court. Thus, contrary to Petitioner's assertions, he was in fact facing up to a life sentence if he went to trial in federal court, and his defense attorneys accurately advised him of this reality.

correctly noted in its decision:

> The only testimony about coercion is the conceivable effect of facing a Federal trial the next week where all of the evidence seized at his home was admissible and that Mr. McCoid, a very experienced criminal defense lawyer, advised of a much longer sentence if he were convicted; and according to Petitioner's own testimony, looking at a possible life sentence. This is not the type of coercion that must be present to set aside a guilty plea.

Based on the foregoing, the undersigned concludes that the record fully supports the state court's findings that Petitioner knowingly and intelligently entered into a plea of guilty. Accordingly, Petitioner is not entitled to habeas relief on this ground.

**C. Ineffective Assistance of Counsel**

Closely related to Petitioner's involuntary plea agreement claim is his ineffective assistance of counsel claim. This is because "the consensual character of a plea is necessarily implicated when, as here, a defendant alleges ineffective assistance of counsel in connection with his plea." *Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1296 n.16 (4th Cir. 1992). Thus, "[a] guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea." *Id*. at 1296.

Ineffective assistance of counsel claims are governed by the two part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "'Deficient performance' is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance." *Griffin v. Warden, Maryland Corr. Adj. Ctr.*, 970 F.2d 1355, 1357 (4th Cir. 1992). Second, the defendant must show

that the deficient performance prejudiced the defense. In order to demonstrate prejudice, the defendant must show that but for his attorney's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687. Error by counsel which falls short of the constitutional ineffectiveness standard does not constitute cause, notwithstanding that the error may arise from inadvertence, ignorance or strategic choice. *Murray v. Carrier*, 477 U.S. 478 (1986); *Griffin v. Aiken*, 775 F.2d 1226 (4th Cir. 1985) *cert. denied*, 478 U.S. 1007 (1986).

It is well settled that this *Strickland* test applies to ineffective assistance claims asserted in relation to a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 53-59 (1985). However, when a petitioner challenges a conviction occurring as the result of a guilty plea, the second prong of the *Strickland* test is slightly modified. To establish prejudice in the face of a guilty plea, the petitioner "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir.1988) (quoting *Hill*, 474 U.S. at 59). "Strict adherence to the deferential *Strickland* standard is 'all the more essential when reviewing the choices an attorney made at the plea bargain stage' because '[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks[.]'" *Smith v. United States*, 2012 WL 5987526 at *10 (S.D.W.V. June 27, 2012) (quoting *Premo v. Moore*, 131 S.Ct. 733, 741 (2011)).

When reviewing claims of ineffective assistance under § 2254(d), as modified by the Anti-Terrorism and Effective Death Penalty Act (AEDPA),

> [t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's

> standard. Were that the inquiry, the analysis would be no different
> than if, for example, this Court were adjudicating a Strickland claim
> on direct review of a criminal conviction in a United States district
> court. Under AEDPA, though, it is a necessary premise that the two
> questions are different. For purposes of § 2254(d)(1), "an
> unreasonable application of federal law is different from an incorrect
> application of federal law." A state court must be granted a deference
> and latitude that are not in operation when the case involves review
> under the Strickland standard itself.

*Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (internal citation omitted). Section 2254, as amended by the AEDPA, is meant to be a high bar because it deals with claims that have already been litigated in state court. *Id*. at 786. Accordingly, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). With these standards in hand, the Court will now look to Petitioner's allegations.

Petitioner's ineffective assistance of counsel claims essentially boil down to two main complaints: (1) that his attorneys failed to file a suppression motion in state court; and (2) that Mr. Gossett abandoned him during the state court proceedings. The state habeas court applied the *Strickland* test and concluded that "[t]here was insufficient evidence presented that the Petitioner received ineffective assistance of counsel." Although Petitioner vehemently disagrees with this finding, petitioner fails to demonstrate that the state court arrived at a conclusion that was contrary to or an unreasonable application of federal law. Further, he fails to prove that the state court unreasonably determined the facts when analyzing his claims. Accordingly, for the reasons set forth more fully below, his ineffective assistance of counsel claims must fail.

*1. Failure to File Suppression Motion*

Petitioner contends that despite repeated requests, Mr. Gossett refused to file a suppression motion in state court, even though he knew that a suppression motion would likely have been

successful in state court. Petitioner further asserts that if Mr. Gossett had filed the motion, and the evidence had been suppressed, he would never have entered into the plea agreement and would have gone to trial on the state charges. Respondent argues that the state habeas court correctly found that Mr. Gossett's decision not to file the suppression motion was a well-founded, strategic decision that was reasonable under the circumstances. The state habeas court applied the *Strickland* test and found that Petitioner was not denied effective assistance of counsel with regard to the suppression motion. In considering this issue, the state court gave "considerable weight" to the testimony of Mr. McCoid as to why the search warrant was not challenged in state court. The habeas court concluded that Petitioner had not met the first prong of *Strickland* because "[t]he decision not to contest the search warrant was based on a strategic decision which the Court finds was well founded under the circumstances, especially since the Petitioner consented to this planned decision."

"The Supreme Court has recognized that strategies devised after extensively investigating the law and facts relevant to any and all probable options are virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995) (citing *Strickland*, 466 U.S. at 690). When reviewing an attorney's performance after the fact, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Moreover, "the failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman v. Morrision*, 477 U.S. 365, 384 (1986); *see also Martin v. Maxey,* 98 F.3d 844, 848 (5th Cir.1996) ("[C]ounsel's failure to move to suppress evidence, when the evidence would have been suppressed if objected to, can constitute deficient performance ... unless counsel's failure was due to a tactical decision."). When the decision

not to file a motion to suppress is made in the defendant's best interest as part of a trial strategy, that decision is judged based on whether the choice fell below an objective standard of reasonableness. *See Kimmelman*; *Morris v. United States*, 2008 WL 4763223 (S.D.W.V. Oct. 27, 2008) (concluding "that counsel reasonably may choose to pursue a plea agreement in lieu of a motion to suppress as part of a deliberate trial strategy, and therefore may make a strategic choice that was reasonable, even apparently wise from counsel's perspective at the time...."); *Perry v. United States*, 2003 WL 22871694, *3 (D.R.I. Oct.27, 2003) ("[C]ounsel made a perfectly reasonable tactical decision to abandon the motion to suppress in order to obtain the benefits in the plea agreement....").

Here, the state habeas court determined that in light of all of the circumstances, the decision not to file a suppression motion was an objectively reasonable trial strategy. Petitioner alleges that Mr. Gossett's refusal to file a suppression motion in state court was because "Gossett just did not want to represent the Petitioner with the zeal required and tried to force a plea on him to get him off of his workload." However, other than this bald assertion, Petitioner presents no evidence that his attorneys' decision not to file the suppression motion was anything other than a tactical strategy. Additionally, he presents no evidence that the decision was an unreasonable one. Moreover, after an independent review of the record, this Court finds that the state habeas court's decision is not contrary to, or an unreasonable application of, clearly established federal law as is required under § 2254. Nor was the state court's decision based on an unreasonable determination of the facts.

According to the record, all of Petitioner's attorneys knew early on that the search warrant in this case likely violated West Virginia Rule of Criminal Procedure 41, and was therefore invalid. The record also reveals that Petitioner repeatedly asked his attorneys to file a suppression motion in state court, but that his attorneys refused to do so even though they strongly suspected that the

evidence would be suppressed and the state charges dismissed. Petitioner urges the Court to view these facts in isolation in making a determination about the reasonableness of the decision not to bring a suppression motion. However, Petitioner fails to acknowledge the difficult situation facing his defense attorneys with regard to the unique posture of Petitioner's case. Petitioner was facing charges based on essentially the same evidence in federal court. From the beginning, the parties contemplated entering into a global plea agreement in order to dispose of all of the federal and state charges at the same time. As the plea negotiations with state and federal prosecutors evolved and Petitioner's attorneys began to realize the substantial benefit to Petitioner of pleading guilty in state, rather than federal court, it became necessary for Petitioner's attorneys to ensure that he could actually be charged in state court. However, if Petitioner successfully suppressed the evidence in state court, the state court would be unable to accept Petitioner's plea because there would be no admissible evidence on the charges. Moreover, the federal prosecutor specifically informed Petitioner's defense attorneys that if they pursued a suppression motion in state court, all deals would be off in federal court. This concern became all the more pressing when the federal district court ruled that the search warrant was valid. Based on the foregoing, it is clear from the record that Petitioner's attorneys made an informed, tactical decision not to contest the evidence at the state level in order to ensure that Petitioner could plead guilty in state court and that they did not merely fail to file the motion due to inadvertence or negligence. *See Green v. Nelson*, 595 F.3d 1245, 1251 (11th Cir. 2010) (explaining that a decision not to file a motion to suppress is a strategic decision, rather than the result of deficient performance, when it involves "a weighing of competing positive and negative consequences that may flow to the defendant from a particular choice").

Moreover, *Strickland* requires two separate inquiries. Thus, even if the Court were to find

that counsel's decision not to move for suppression amounted to deficient performance, the Petitioner must still show that he was prejudiced by this action. The state habeas court did not address this prong of the *Strickland* test. As noted above, to establish prejudice in the face of a guilty plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir.1988). Petitioner contends that he "never would have entered into a guilty plea agreement if the evidence, a material necessity to sustain a conviction, were properly suppressed." He further asserts that "had Petitioner's counsel pursued the state suppression motion, and in a timely manner so as not to push a plea deal so close to the pending federal trial, Petitioner had everything to gain and nothing to lose. A better deal could have been worked out once a state suppression motion was granted or, he could have just rolled the dice with a jury and possibly won an acquittal on some or all of the charges." Petitioner again glosses over the grimness of the situation in which he found himself. Had his lawyers filed a state suppression motion, Petitioner would not have been *offered* a plea agreement in state court. Instead, Petitioner would have been forced to either accept a federal plea agreement with more time than he wanted to serve or stand trial on the federal charges, an option he repeatedly told his attorneys he was not interested in taking. Thus, contrary to his assertions, he had everything to lose by filing a suppression motion and nothing to gain.

Based on the foregoing, the undersigned concludes that the record fully supports the state court's findings that the decision not to contest the search warrant was a well-founded strategic decision and that Petitioner's attorneys acted reasonably under the circumstances. Accordingly, in light of the review that this Court undertakes within the confines of § 2254, the undersigned cannot

find that the state court's findings are contrary to, or an unreasonable application of, the *Strickland* standard.

*2. Mr. Gossett's Abandonment*

Petitioner also asserts that Mr. Gossett abandoned him in state court and was unable to be reached to discuss the state court plea agreement. The state habeas court rejected this claim based on Mr. McCoid's testimony that Petitioner directed him to conduct the plea negotiations and specifically objected to Mr. Gossett's appearance at the plea hearing. Additionally, the state habeas court noted that Petitioner acknowledged at the plea hearing that he was satisfied with Mr. McCoid's representation as it related to the global plea agreement. The state habeas court concluded that the conduct of Petitioner's attorneys was reasonable under the circumstances. After reviewing the record, the undersigned finds that the state court's determination of this issue was not contrary to, or an unreasonable application of, *Strickland*.

There is no question that Mr. Gossett had taken a back-seat to Mr. McCoid by the time Petitioner entered into the global plea agreement. Mr. Gossett admitted as much during his testimony at the omnibus hearing. However, as the state habeas court noted in its decision, and Petitioner concedes in his Response brief, this was done at the express directive of Petitioner. Additionally, the record shows that one of the reasons Mr. Gossett was less involved during this phase of the proceedings was that the state case had taken a back-seat to the federal case. Moreover, Mr. Gossett was fully aware of the terms of the plea agreement because it was essentially the same plea agreement he previously negotiated with prosecutors, which Petitioner ultimately rejected. Finally, the trial court was fully cognizant of the fact that Mr. McCoid, rather than Mr. Gossett, was representing Petitioner at the plea hearing as evidenced by the following exchange:

THE COURT: You're represented by Attorney Robert McCoid in this matter. Have you had the opportunity to ask your attorney questions concerning the crimes contained in the information?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. How long has Mr. McCoid been representing you in this matter?

THE DEFENDANT: Since the end of May.

THE COURT: Okay. And was he representing you on related federal charges?

MR. MCCOID: Your Honor, Mr. Loy is subject of a pending federal indictment and this matter is being initiated with the consent of the Hancock County Prosecuting Attorney and the United States Attorney's Office to globally dispense of all cases.

THE COURT: Okay.

MR. MCCOID: So I'm primarily functioning more as his federal than his state counsel.

MR. DAVIS: And to explain, Randy Gossett represents him on the pending indictment in Hancock. However, this substitute information has indicated to take care of both. Because basically we're appearing with Attorney McCoid today because of a resolution we reached for this very reason.

THE COURT: So in addition to Mr. McCoid representing you, at least on the federal matters since May, you also were represented at one time in the state proceeding by Attorney Randy Gossett, correct?

THE DEFENDANT: Well, I was recharged. He was there for that recharge, but I never saw him since then.

THE COURT: Okay. And it's your understanding and your preference to have Mr. McCoid represent you at this time?

THE DEFENDANT: Yes.

Resp't Ex. 3 at 8-10. Additionally, the trial court acknowledged that Petitioner was dissatisfied with

Mr. Gossett and addressed that issue during Petitioner's plea hearing as follows:

> THE COURT: Okay. And I understand that you were not satisfied with the services of your court appointed attorney in this matter. But you understand had you called that to the Court's attention, and in fact you wanted to go to trial, we would have made sure that you had an attorney to represent you on the state charges at no cost to you and to go forward and defend you throughout the trial. Do you understand that?
>
> THE DEFENDANT: I did write you a letter, Judge, about the counsel that I was with before we got to this plea bargain, about me not being represented before. And once I heard from him I did write to you regarding that. I did write you a letter about that incident. But I understand what you're saying, yes.
>
> THE COURT: I did get that letter. But I was also under the impression that this was going to be resolved, probably in federal court. Now it's being resolved in state court and that's fine. Okay. But you understand if you wanted to go to trial you would have been given a different attorney who would--
>
> THE DEFENDANT: Yes, sir.

Resp't Ex. 3 at 16-17. Under these circumstances, the undersigned cannot find that Mr. Gossett's actions fell "below the wide range of professionally competent performance" so as to amount to deficient performance. *Griffin*, 970 F.2d at 1357. Moreover, even assuming that Mr. Gossett should have been more involved in Petitioner's state case, Petitioner has not shown that his lack of involvement resulted in prejudice. As noted above, to make this showing, Petitioner would have to establish that but for Mr. Gossett's conduct, he would have rejected the plea and insisted on going to trial. *Hill*, 474 U.S. at 59. Other than asserting that Mr. Gossett's absence resulted in no suppression motion being filed, which is fully addressed above, Petitioner offers no evidence that Mr. Gossett's participation would have resulted in his rejection of the plea agreement. In fact, Petitioner fully acknowledged that Mr. McCoid adequately represented him during the plea hearing.

Consequently, this claim is without merit.

*3. Ineffective Assistance of Habeas Counsel*

Petitioner also contends that his habeas counsel was ineffective. However, this claim is easily disposed of because "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." § 28 U.S.C. § 2254 (i). Accordingly, there is no need for the Court to reach the merits of this claim.

**D. Fourth Amendment Claims**

Petitioner contends that the search warrant police obtained to search his residence was invalid and therefore violated his Fourth Amendment rights against unreasonable search and seizure. Even assuming, *arguendo*, that the search warrant was constitutionally deficient, Petitioner's Fourth Amendment claims are not cognizable for a number of reasons.

First, as noted above, "a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." *Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1294 (4th Cir. 1992); *Tollett v. Henderson*, 411 U.S. 258, 267. As discussed above, Petitioner was fully aware that he was waiving all Fourth Amendment challenges by pleading guilty. Thus, because Petitioner's guilty plea was knowing and voluntary, it operated as a waiver of all non-jurisdictional defects, including his current Fourth Amendment claims. *See Moore v. Hunt*, 499 F.Supp.2d 679, 683 (W.D.N.C. 2007).

Moreover, even if his guilty plea did not waive his Fourth Amendment claims, Petitioner is procedurally barred from collaterally attacking the search and seizure. *Stone v. Powell*, 428 U.S. 465, 482 (1976), precludes this Court from granting habeas relief on an alleged Fourth Amendment

violation if "the State has provided a full and fair litigation" of the claim. When considering a Fourth

Amendment claim in a § 2254 petition, "a district court...should, under *Stone v. Powell*, first inquire

as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims

under the then existing state practice." *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978). Once

a district court determines that the petitioner was afforded this opportunity, "it need not inquire

further into the merits of petitioner's case, when applying *Stone v. Powell* unless the prisoner alleges

something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment

claim or claims was in some way impaired." *Id*.

Here, Petitioner does not allege that the mechanism of suppression was unavailable to him

in state court, merely that his attorneys advised him against using the mechanism in order to avoid

a federal trial. Petitioner contends that because Mr. Gossett essentially refused to meet with him to

discuss the filing of the suppression motion, he was precluded from filing a suppression motion in

state court. However, as previously discussed, the record clearly shows that Petitioner made an

informed decision to plead guilty in state court, despite his knowledge that a suppression motion

would likely be successful in state court, in order to avoid a federal trial. During the plea hearing,

Petitioner was fully advised by the trial court of his continuing right to plead not guilty and to contest

the evidence against him. Further, the trial court acknowledged that Petitioner was dissatisfied with

Mr. Gossett's representation and made it clear that Petitioner could enter a not guilty plea and have

new counsel appointed. The record clearly shows that Petitioner could have raised his Fourth

Amendment claims in state court by moving to suppress the evidence seized. That he chose not to

do so in favor of pleading guilty to the state charges is of no consequence to this determination. *See,

e.g., Sallie v. State of North Carolina,* 587 F.2d 636, 639 (4th Cir.1978) (holding that where

27

petitioner is given, but does not pursue, opportunity for the full and fair litigation of a fourth amendment claim, petitioner is foreclosed from pursuing relief in federal habeas corpus); *Moore v. Hunt*, 499 F.Supp.2d 679, 683 (W.D.N.C. 2007) (holding that Petitioner who chose to plead guilty rather than go to trial and litigate a Fourth Amendment search and seizure claim is precluded from raising claim on federal habeas review); *Cleofas v. South Carolina*, 2009 WL 2182152 (D.S.C. July 20, 2009) ("[A] defendant is required to file and proceed on a motion to suppress based on the Fourth Amendment grounds. If he has failed to do so, he can only raise the issue as one of ineffective assistance of counsel."). Additionally, Petitioner's Fourth Amendment claims were fully considered, and rejected, on the merits, by the state habeas court. Thus, the record shows that Petitioner was given ample opportunity to litigate his Fourth Amendment claims in state court. Accordingly, he is not entitled to federal habeas review of these claims.

## E. Cumulative Error

Finally, Petitioner argues that the cumulative effect of his attorneys' individual actions, which standing alone might not warrant relief, collectively amount to ineffective assistance of counsel. Although the Court recognizes that "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error" and that "[t]he purpose of a cumulative-error analysis is to address that possibility," *United States v. Rivera*, 900 F. 2d 1462, 1469 (10th Cir. 1990), a "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error." *Fisher v. Angelone*, 163 F.3d 835, 853 n. 9 (4th Cir. 1998). Thus, because the Court has not found any individual constitutional errors with regard to Petitioner's ineffective assistance of counsel claims, a cumulative-error analysis is neither necessary nor appropriate. *See Id*. at 853 ("Having just

determined that none of counsel's actions could be considered constitutional error...it would be odd, to say the least, to conclude that those same actions, when considered collectively, deprived Fisher of a fair trial.").

## V. CONCLUSION & RECOMMENDATION

For the reasons set forth above, the undersigned recommends that Respondent's Second Motion for Summary Judgment (Doc. 52) be **GRANTED**, Petitioner's Second Motion for Summary Judgment (Doc. 65) be **DENIED** and Petitioner's § 2254 petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen [14] days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge of record. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the pro se plaintiffs by certified mail, return receipt requested, to their last known address as reflected on the docket sheet, and to any other counsel of record, as applicable.

DATED: February 5, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE