IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RAY LOY,

      Petitioner

v.              //       CIVIL ACTION NO. 1:13-CV-117
                                    (Judge Keeley)

EVELYN SEIFERT,

      Respondent.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 69], GRANTING THE RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]

Pending before the Court is the magistrate judge's Report and Recommendation ("R&R") (dkt. no. 69) regarding the pro se petitioner, Ray Loy ("Loy")'s, petition pursuant to 28 U.S.C. § 2254 (dkt. no. 1), and motion for summary judgment pursuant to Fed. R. Civ. P. 56 (dkt. no. 65). Also pending is the motion for summary judgment filed by the respondent, Evelyn Seifert ("Seifert") (dkt. no. 52). For the reasons that follow, the Court **ADOPTS** the magistrate judge's R&R in its entirety.

### I. FACTUAL BACKGROUND[1]

**A. Pre-Conviction and Plea Agreement**

Pursuant to reports of illegal activity, police obtained a search warrant and, on May 19, 2007, seized various forms of media

---

[1]The Court has considered all inferences to be drawn from the facts in the light most favorable to the petitioner. <u>Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 574, 574 (1986).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

from Loy's home. (Dkt. No. 64-3). Based on the seized evidence, a grand jury in Hancock County returned a five-count indictment charging Loy with second-degree sexual assault, use of a minor in producing obscene matter and to do sexually explicit conduct, and possession of material depicting minors engaged in sexually explicit conduct. (Dkt. No. 64-3). The circuit court appointed James Carey ("Carey") to defend Loy in that criminal action. (Dkt. No. 52-3).

On November 14, 2007, a grand jury sitting in the United States District Court for the Northern District of West Virginia charged Loy with twenty counts of producing child pornography in violation of 18 U.S.C. § 2251(a)(e). Assistant Federal Public Defender Brendan Leary ("Leary") initially represented Loy in this federal case.

Early in the case, the federal and state prosecutors met with Loy's defense counsel to discuss a global plea agreement that would dispose of both the state and federal cases. Before the end of 2007, however, Loy's defense attorneys became aware that the search warrant underlying the seizure of evidence in the state case likely violated Rule 41(c) of the West Virginia Rules of Criminal Procedure because it failed to include a properly executed

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

affidavit. (Dkt. No. 52-2). After being notified of the deficiency by defense counsel, the federal prosecutor warned that the filing of a suppression motion in state court would upend any global plea agreement, resulting in a trial of Loy's federal pornography case. With that information in hand, Loy's federal and state defense attorneys concluded that, because their client faced much harsher penalties in federal court, it made strategic sense for them to withhold any suppression motion and dispose of the case in state court.

Loy was unhappy with this strategy, and requested that the state court appoint a new defense attorney for him. The Court did so, replacing Carey with Randy Gossett ("Gossett"), who, on behalf of Loy, continued to participate in plea negotiations with the federal and state prosecutors. In March 2008, the parties reached a global plea agreement pursuant to which Loy would plead guilty to the pending state charges in Hancock County. At his plea hearing, however, Loy refused to enter the anticipated guilty pleas, thereby prompting the state prosecutors to move to dismiss the state case against Loy without prejudice, in order to pursue a superseding indictment based on additional information obtained in the course of the federal investigation. The state court granted that motion

3

MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]

over Loy's objection.

Shortly thereafter, on March 21, 2008, Loy filed a motion in his federal case to suppress all evidence derived from the search warrant, arguing the search violated his Fourth Amendment rights. The federal magistrate judge conducted an evidentiary hearing and took the matter under advisement. Meanwhile, on April 8, 2008, a grand jury in Hancock County returned a thirteen-count Superseding Indictment that charged Loy with second-degree sexual assault, use of a minor to produce obscene matter and to do sexually explicit conduct, and possession of material depicting minors engaging in sexually explicit conduct. After the circuit court reappointed Gossett to defend Loy, Loy directed Gossett to file a suppression motion in state court.

Despite this, with the federal charges still pending, the parties resumed plea negotiations in a further attempt to resolve both cases through a plea at the state level. Loy rejected the forthcoming plea offers, however, because they contemplated a sentence at least 21 years of incarceration.

On April 21, 2008, the magistrate judge recommended that Loy's suppression motion be denied. After the district court adopted this recommendation, Loy moved to remove Leary from his federal

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

case.  On May 16, 2008, the district court granted the motion and appointed Robert McCoid ("McCoid") to replace Leary.

On July 18, 2008, McCoid's law partner, John Pizzuti ("Pizzuti"), met with Loy at the Northern Regional Jail and discussed the terms of a global plea agreement that contemplated Loy pleading guilty in state court to an Information charging him with ten counts of use of minors in filming sexually explicit conduct.  In exchange, he would receive a maximum possible sentence of 18.5 years imprisonment, and the state and federal prosecutors would dismiss the pending state and federal cases.  (Doc. 52-9).

After meeting with Pizzuti, Loy accepted this offer, and on July 24, 2008, appeared in circuit court in Hancock County with McCoid to tender his guilty pleas to the Information.  (Doc. 52-1). Following a lengthy colloquy, the circuit court found that Loy fully understood the rights he was giving up by pleading guilty to the Information, and that he knowingly and intelligently was waiving those rights.  (Doc. 52-1, 52-8).  It then accepted Loy's guilty pleas to the ten counts in the Information, and, on August 14, 2008, sentenced him to a term of imprisonment of 18.5 years. (Doc. 52-1, 52-10).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

## II. PROCEDURAL HISTORY

**A. State Habeas Corpus Proceedings**

On March 19, 2009, Loy filed a <u>pro</u> <u>se</u> petition in the Circuit
Court of Hancock County, West Virginia, seeking post-conviction
habeas relief. (Dkt. No. 1-3). Loy's appointed habeas counsel
filed an amended petition on August 17, 2011. The state habeas
court denied the amended petition on October 27, 2011. <u>Id.</u> Loy's
counsel subsequently filed a petition for appeal with the West
Virginia Supreme Court of Appeals on November 18, 2011 that the
Court denied on February 11, 2013. (Dkt. No. 52-5).

**B. Federal Habeas Corpus Proceedings**

On March 28, 2013, Loy filed a <u>pro</u> <u>se</u> petition for writ of
habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state
court conviction. His petition raises the following four grounds
for relief: (1) his plea agreement was involuntary; (2) his counsel
rendered ineffective assistance; (3) the state's search constituted
an unlawful search and seizure; and (4) his case is riddled with
cumulative error.

After Loy and Seifert filed cross-motions for summary
judgment, the Court referred them to United States Magistrate Judge
John S. Kaull for an R&R in accordance with LR PL P 2. Magistrate

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

Judge Kaull issued an R&R on February 6, 2014, recommending that Seifert's motion be granted and Loy's § 2254 petition be dismissed with prejudice. Loy submitted timely objections to the magistrate judge's R&R on February 20, 2014, in which he contended that the magistrate judge had erroneously granted Seifert's motion for summary judgment.[2] (Dkt. No. 71).

### III. LEGAL STANDARDS

#### A. <u>Pro</u> <u>Se</u> Pleadings

Because Loy is acting <u>pro</u> <u>se</u>, the Court must liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, (1976); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972) (per curiam); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978); <u>Gordon v. Leeke</u>, 574 F.2d 1147 (4th Cir. 1978). Even a <u>pro</u> <u>se</u> complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which the plaintiff could

---

[2] Pursuant to 28 U.S.C § 636(b)(1)(C), this Court is required to make a <u>de</u> <u>novo</u> review of those portions of the magistrate judge's findings to which objection is made within fourteen days. However, this Court is not required to review, under a <u>de novo</u> or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are timely filed. <u>Thomas v. Arn</u>, 474 U.S. 140, 150 (1985). In the absence of a specific objection, the Court will only review the magistrate judge's conclusion's for clear error. <u>Id.</u>

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

prevail. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

**B. Motion for Summary Judgment**

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A)(a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Furthermore, the Court must view the competing motions for summary judgment through the lens of the federal habeas statute. Wiggins v. Smith, 539 U.S. 510, 520 (2003). Under § 2254, habeas

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

relief may not be granted unless the underlying state court
adjudication of the petition "was contrary to, or involved
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States." 28 U.S.C.
§ 2254(d)(1); <u>White v. Woodall</u>, 134 S.Ct. 1697, 1702 (U.S. 2014).

A state court decision is "contrary to . . . clearly
established Federal law, as determined by the Supreme Court," 28
U.S.C.A. § 2254(d)(1), "if the state court arrives at a conclusion
opposite to that reached by the Court on a question of law or if
the state court decides a case differently than the Court has on a
set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at
405. A state court decision "involves an unreasonable application
of[] clearly established Federal law, as determined by the Supreme
Court," 28 U.S.C.A. § 2254(d)(1), if the state court decision
"identifies the correct governing legal principle from the Court's
decisions but unreasonably applies that principle to the facts of
the prisoner's case." <u>Williams</u>, 529 U.S. at 412.

An objectively "unreasonable application of federal law is
different from an incorrect or erroneous application of federal
law." <u>Id.</u> Thus, "a federal habeas court may not issue the writ
simply because that court concludes in its independent judgment

9

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, that application must also be unreasonable for habeas relief to be granted.

As these principles make clear, § 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts:

> [Section 2554(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the [Supreme] Court's precedents. It goes no farther. Section 2554(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332n. 5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. Thus, § 2254 sets an extremely high bar on a petitioner seeking habeas relief.

Finally, under § 2254, the factual findings of the state court are presumed to be correct, and a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Where the state court

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). Accordingly, courts should not "casually cast aside a state court's factual findings." Id.

## IV. LEGAL ANALYSIS

Seifert's motion for summary judgment asserts that (1) Loy waived his right to assert constitutional challenges to his conviction by freely and voluntarily entering into a plea agreement, and pleading guilty pursuant to its terms; (2) Loy's Fourth Amendment claims are not within the Court's jurisdiction; and (3) the state habeas court correctly applied federal law in concluding that Loy's claims of ineffective assistance of counsel were without merit. The Court will address each of these issues in turn.

### A. Validity of Plea Agreement

"It is well-established that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." Fields, 956 F.2d at 1294. In general, "once judgment on a plea is final, collateral inquiry

MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]

for constitutional claims that occurred prior to the entry of the guilty plea is generally limited to whether the plea itself was knowing and voluntary." Slavek v. Hinkle, 359 F.Supp.2d 473, 481 (E.D. Va. 2005).  Thus, because several of Loy's claims may be foreclosed if his guilty plea is found to have been knowing and voluntary, the Court turns to this issue first.

Loy contends that his attorneys coerced him into entering guilty pleas to the ten counts in the Information.  Specifically, he argues that his attorneys failed to review the terms of the plea agreement sufficiently with him, and only gave him a few days to consider it.  Furthermore, he contends his lawyers erroneously advised him that he would face a life sentence in federal court if he did not plead guilty in state court.

The state habeas court determined that Loy knew the consequences of his guilty pleas, including the fact that he was waiving further review of his Fourth Amendment challenges.  (Dkt. No. 1-3).  It further concluded that, notwithstanding any pressure Loy felt he was under when he agreed to enter into the plea agreement a week prior to his federal trial, that pressure is not the type of coercion that must be present in order to warrant setting aside a guilty plea.  Id.  Accordingly, the state court

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

found that Loy entered knowing and intelligent guilty pleas to each
of the ten counts of the Information, and was under no duress or
coercion when he entered into the plea agreement.   <u>Id.</u>

"The standard for determining whether a guilty plea is
constitutionally valid is whether the guilty plea represents a
voluntary and intelligent choice among the alternative courses of
action open to the defendant . . . . In applying this standard,
courts looks to the totality of the circumstances surrounding the
guilty plea . . . granting the defendant's solemn declaration of
guilt a presumption of truthfulness." <u>Beck v. Angelone</u>, 261 F.3d
377, 394 (4th Cir. 2001).  "A plea may be involuntary if the
defendant does not understand the nature of the constitutional
rights he is waiving, or unintelligent if the defendant does not
understand the charges against him." <u>Id.</u>  "Absent clear and
convincing evidence to the contrary, a defendant is bound by the
representations he makes under oath during a plea colloquy."
<u>Fields</u>, 956 F.2d at 1299.  And, "findings by a sentencing court in
accepting plea 'constitute a formidable barrier' to attacking the
plea."  <u>United States v. Lambey</u>, 949 F. 2d 133, 137 (4th Cir.
1991).

The record of the plea hearing establishes that Loy understood

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

both the charges against him as well as the terms and consequences
of the plea agreement.     Before accepting Loy's guilty plea, the
trial court conducted an exhaustive colloquy with him concerning
whether his guilty plea was voluntary and intelligent. (Doc. 52-1).
His responses to the trial court's questions unequivocally
demonstrate that he understood the charges against him, the terms
of the plea agreement, and the consequences of his guilty pleas.
As well, Loy acknowledged that he had met with his attorney "quite
a few" times before signing the plea agreement, and that he was
satisfied with the services of his attorney.     <u>Id.</u>    Most
significantly, regarding Loy's right to challenge the state's
evidence, the following exchange took place between Loy and the
court:

> THE COURT: And you have the right to challenge in the
> trial court, and that would be in front of me and on
> appeal, all pretrial proceedings.  So if you believe the
> state has violated your constitutional rights in
> gathering evidence against you or detaining you, you
> would have the right to bring that to my attention.  And
> if I ruled against you, you would have the right to
> appeal those same matters to the Supreme Court.  Do you
> understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: If you enter this guilty plea you're giving up
> that right.  Do you understand that?
>
> THE DEFENDANT: Yes, sir.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

> THE COURT: And you have the right to move to suppress
> illegally obtained evidence and illegally obtained
> confessions.  If you enter the plea you will be giving up
> this right.  Do you understand that?
>
> THE DEFENDANT: Yes, sir.

(Dkt. No. 52-1).

Despite those representations establishing his understanding
both of the charges against him and also of the consequences of his
guilty pleas, Loy now contends he only pled guilty because his
attorneys coerced him into doing so.  He further argues that his
attorneys did not properly inform him of the consequences of his
guilty plea.

Absent clear and convincing evidence to the contrary, Loy is
bound by his representations at the plea hearing.  <u>Fields</u>, 956 F.2d
at 1299.  Here, the record establishes that Loy's attorneys made
him fully aware of the charges against him and the consequences of
his guilty pleas.  During the state habeas proceedings, Gossett and
McCoid testified they "repeatedly" discussed with Loy the
consequences of being tried in federal rather than state court, and
also the terms of the plea agreement.  (Doc. 52-2 at 108). McCoid
also testified that Loy was very involved in the conduct of the
plea negotiations between the state and federal prosecutors and his

15

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

defense attorneys. <u>Id.</u> Both Gossett and McCoid testified Loy had indicated to them that he was aware of and agreed with all the terms of the plea agreement, and that he was willingly entering into that agreement.

Although Loy's attorneys advised him that he faced a federal trial and, if convicted, a potential life sentence should he refuse to plead guilty to the state court Information, this fact does not compel a conclusion that Loy's plea was coerced or threatened.[3] It is well-established that a guilty plea is not coerced even if compelled by certain circumstances. <u>See</u> <u>Brady v. United States</u>, 397 U.S. 742, 750-51 (1970) (holding that a guilty plea is not coerced even if it is compelled, to a certain extent, "by the defendant's desire to accept the certainty or probability of a

---

[3] Loy alleges that his attorneys' advice regarding a potential life sentence in federal court was erroneous. He bases this on the fact that, at one point, the federal prosecutor offered him a plea agreement under which he would serve approximately 21 years, which Loy notes is only 2.5 more years than he is serving under the state plea agreement. What Loy fails to realize, however, is that by the time the plea agreement in state court was finalized, a plea agreement in federal court was entirely off the table. Loy was facing trial on 20 counts in one week. Moreover, as McCoid testified to during the omnibus evidentiary hearing, because of Loy's prior conviction on similar charges, he was facing a federal sentencing guideline range of up to life in prison. Thus, contrary to Loy's assertions, he was in fact facing up to a life sentence if he went to trial in federal court, and his defense attorneys accurately as properly advised him of this possibility.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

lesser penalty rather than face a wider range of possibilities
extending from acquittal to conviction and a higher penalty
authorized by law for the crime charged").

Given these facts, the state court's adjudication of this
issue is not contrary to clearly established federal law, nor is it
an unreasonable determination of the facts in light of the evidence
presented in the state court proceedings.  The Court therefore
rejects Loy's petition for habeas relief on the basis of an
involuntary or compelled guilty plea.

## B. Ineffective Assistance of Counsel

In order to succeed on an ineffective assistance of counsel
claim, a petitioner must establish both that counsel's performance
was objectively unreasonable, and also that such unreasonable
performance prejudiced the defense.  Strickland v. Washington 466
U.S. 668, 687 (1984).  To satisfy this test, "the defendant must
show there is a reasonable certainty that, but for counsel's
professional errors, the result of the proceeding would have been
different."  Id. at 694.  When examining counsel's behavior, there
is a "strong presumption" that an attorney's behavior is within
"the wide range of reasonable professional assistance," Id. at 689,
a standard of reasonableness that is highly deferential.  Kimmelman

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

v. Morrison, 477 U.S. 365, 381 (1986).  Overcoming Strickland's
"high bar is never an easy task."  Padilla v. Kentucky, 559 U.S.
356, 371 (2010)).

Despite Loy's objection to the contrary, it is well settled
that Strickland's test applies to ineffective assistance claims
asserted in relation to a guilty plea.  Hill v. Lockhart, 474 U.S.
52, 53-59 (1985).  When a petitioner challenges a conviction
resulting from a guilty plea, however, the second prong of the
Strickland test is slightly modified.  To establish prejudice in
the face of a guilty plea, the petitioner "'must show that there is
a reasonable probability that, but for counsel's errors, he would
not have pleaded guilty and would have insisted on going to
trial.'"  Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988).
"Strict adherence to the deferential Strickland standard is 'all
the more essential when reviewing the choices an attorney made at
the plea bargain stage' because '[p]lea bargains are the result of
complex negotiations suffused with uncertainty, and defense
attorneys must make careful strategic choices in balancing
opportunities and risks[.]'"  Smith v. United States, 2012 WL
5987526 at *10 (S.D.W. Va. June 27, 2012) (quoting Premo v. Moore,
131 S.Ct. 733, 741 (2011).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

When reviewing claims of ineffective assistance of counsel pursuant to § 2254, "the pivotal question is whether the state court's application of the Strickland standard was unreasonable." Harrington v. Richter, 131 S.Ct. 770, 785 (2011). Even erroneous or incorrect applications of federal law, however, may fail to satisfy the unreasonableness test. Williams v. Taylor, 529 U.S. 362 (2000). "A state court must be granted deference and latitude" and "even a strong case for relief does not mean the state court's conclusion was unreasonable." Harrington, 131 S.Ct. at 785.

In his petition, Loy bases his allegations of ineffective assistance of counsel on two grounds. First, he asserts that his attorneys failed to file a suppression motion in state court. Second, he alleges that his second state attorney, Gossett, abandoned him during his state court proceedings.

**1. Failure to File a Suppression Motion**

Loy contends that, despite his repeated requests, his attorneys refused to file a suppression motion on his behalf in state court. He further asserts that, had the motion been granted and the evidence suppressed, he would never have entered into a plea agreement. Seifert, by contrast, argues that defense counsels' decision not to file the motion was a well-founded,

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

strategic decision that was reasonable under the circumstances.
Seifert presents the more compelling argument.

"The Supreme Court has recognized that strategies devised
after extensively investigating the law and facts relevant to any
and all probable options are virtually unassailable." Bell v.
Evatt, 72 F.3d 421, 429 (4th Cir. 1995).  Accordingly, the Court
"must indulge a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance; that
is, the defendant must overcome the presumption that under the
circumstances, the challenged action might be considered sound
trial strategy." Strickland, 466 U.S. at 689.  The reasonableness
of counsel's decisions and performance "is to be evaluated from
counsel's perspective at the time of the alleged error and in light
of all the circumstances." Kimmelman, 477 U.S. at 384.

Furthermore, "the failure to file a suppression motion does
not constitute per se ineffective assistance of counsel."  Id.
"Rather, counsel's ability to make tactical decisions regarding a
motion to suppress is such that he may conclude that it is in the
defendant's best interest not to file a motion to suppress even if
that motion is potentially meritorious." Morris v. United States,
2008 U.S. Dist. LEXIS 89332 (S.D.W. Va. Oct. 27, 2008) (citing

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

<u>Martin v. Maxey</u>, 98 F.3d 844, 848 (5th Cir. 1996).

Here, after considering all the circumstances, the state habeas court determined that the decision of Loy's defense attorneys not to file a suppression motion was an objectively reasonable trial strategy. Loy attacks that conclusion as erroneous, and argues that the actual reason his attorneys failed to file the motion was because they "did not want to represent the Petitioner with the zeal required and tried to force a plea on him to get him off of their workload." (Dkt. No. 1). Loy, however, has provided no evidence that his attorneys' failure to file a suppression motion was based on any reason other than a tactical strategy.

The record establishes that, as the plea negotiations with state and federal prosecutors evolved, Loy's federal and state defense attorneys began to realize the benefit that would accrue to Loy by pleading guilty in state rather than federal court. It then became incumbent for them to ensure that Loy actually could be charged in state court. Had Loy succeeded in suppressing certain evidence in his state court case, no court could have accepted his plea since, at that point, there would have been no admissible evidence as to his charges. Moreover, the federal prosecutor had

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

specifically warned Loy's attorneys that if they filed a suppression motion in state court, the Government would pursue the federal charges.

Thus, rather than performing deficiently, Loy's attorneys made an informed, tactical decision not to contest the evidence in state court, thereby ensuring that Loy could plead guilty in that venue. See Green v. Nelson, 595 F.3d 1245, 1251 (11 Cir. 2010) (explaining that a decision not to file a suppression motion is a strategic decision, rather than the result of deficient performance, when it involves a weighing of competing positive and negative consequences that may flow to the defendant from a particular choice).  That strategic decision was well-founded, and not contrary to, or an unreasonable application of, the Strickland standard.

**2. Gossett's Alleged Abandonment**

Loy's next assertion, that Gossett abandoned him in state court and was unreachable to discuss the state court plea agreement, is also unpersuasive.  The state habeas court rejected this claim based on McCoid's testimony that Loy had directed him to negotiate the global plea agreement, and specifically had objected to having Gossett appear at the plea hearing.  Additionally, the court noted that, during his plea hearing, Loy acknowledged that he

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

was satisfied with McCoid's representation as it related to the global plea agreement. The court ultimately concluded that the conduct of Loy's attorneys was reasonable under the circumstances. A careful review of the record establishes that the state court's determination was neither contrary to, nor an unreasonable application of, Strickland.

In its decision, the state habeas court noted, and Loy concedes, that Loy had directed McCoid to take over his representation from Gossett in state court. The evidence further establishes that one of the reasons Gossett was less involved during the plea phase of the proceedings was that the state court case had taken a back seat to consideration of Loy's exposure in the federal case. Nevertheless, Gossett was clearly aware of the terms of the plea agreement; in point of fact, it was essentially the same agreement he previously had negotiated with state prosecutors that Loy had rejected.

From these circumstances, the Court cannot conclude that Gossett's actions fell "below the wide range of professionally competent performance" so as to amount to deficient performance. Griffin, 970 F.2d at 1357. The state court's ruling on this matter therefore did not violate the Strickland standard.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

## C. Fourth Amendment Claims

Loy contends that the search warrant obtained by the police for his residence was invalid and violated his Fourth Amendment rights against unreasonable search and seizure. Even assuming, *arguendo*, that the search warrant was constitutionally deficient, Loy's Fourth Amendment claims are not cognizable.

As the Court has already discussed, "a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." Fields v. Attorney General of State of Md., 956 F.2d 1290, 1294 (4th Cir. 1992). From the record, there can be no doubt Loy was fully aware that he was waiving his right to constitutional challenges when he entered his guilty pleas to the ten counts in the state court Information. Thus, it is beyond peradventure that his pleas were knowing and voluntary, and thus operated as a waiver of his Fourth Amendment claims. Fields, 956 F.2d at 1294.

Moreover, even if, for some reason, Loy's guilty pleas had not operated as a waiver of his Fourth Amendment claims, he is procedurally barred from collaterally attacking the search and seizure. Stone v. Powell, 428 U.S. 465, 482 (1976). In Stone, the Supreme Court of the United States held that a federal district

court may not grant habeas relief on the basis of an alleged violation of the Fourth Amendment if "the State has provided a full and fair litigation of the claim." Stone v. Powell, 428 U.S. 465, 482 (1976); Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978).

When considering a Fourth Amendment claim in a § 2254 petition, "a district court...should, under Stone v. Powell, first inquire to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice." Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978). Once a district court determines that the petitioner was afforded this opportunity, "it need not inquire further into the merits of petitioner's case, when applying Stone v. Powell, unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." Id.

Loy has not alleged that the state court denied him his right to file a suppression motion. Rather, he argues that his attorneys erroneously advised him against filing such a motion in order to avoid a federal trial. Consequently, Loy alleges he was precluded from having a full and fair opportunity to litigate his claims.

The record, however, establishes that Loy made a voluntary and

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

informed decision to plead guilty in state court with the knowledge that it would foreclose his ability to file a suppression motion. The state court fully advised him at his plea hearing of his right to plead not guilty, and to contest the evidence against him by filing a suppression motion. That he chose not to do so and pled guilty to the charges in the Information is of no consequence to this Court's determination whether he was given a full and fair opportunity to litigate his claims. See Sallie v. State of North Carolina, 587 F.2d 636, 639 (4th Cir.1978) (holding that where petitioner is given, but does not pursue, opportunity for the full and fair litigation of a fourth amendment claim, petitioner is foreclosed from pursuing relief in federal habeas corpus); Moore v. Hunt, 499 F.Supp.2d 679, 683 (W.D.N.C. 2007) (holding that Petitioner who chose to plead guilty rather than go to trial and litigate a Fourth Amendment search and seizure claim is precluded from raising claim on federal habeas review); Cleofas v. South Carolina, 2009 WL 2182152 (D.S.C. July 20, 2009) ("[A] defendant is required to file and proceed on a motion to suppress based on the Fourth Amendment grounds. If he has failed to do so, he can only raise the issue as one of ineffective assistance of counsel.").

Additionally, Loy's Fourth Amendment claims were fully

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

considered and rejected on the merits by the state habeas court. Thus, he was given a full and fair opportunity to litigate any Fourth Amendment claims in state court, and is not entitled to federal habeas review of those claims here.

**D. Cumulative Error**

Loy does not object to Magistrate Judge Kaull's recommendation that the cumulative error portion of his petition be denied. Accordingly, finding no clear error, the Court adopts the magistrate judge's recommendation regarding Loy's cumulative error claim.

**V. CONCLUSION**

For the reasons discussed, the Court:

1) **ADOPTS** the Report and Recommendation in its entirety (dkt. no. 69);

2) **GRANTS** Seifert's Motion for Summary Judgment (dkt. no. 52);

2) **DENIES** Loy's Motion for Summary Judgment (dkt. no. 65); and

4) **ORDERS** that Loy's 28 U.S.C. § 2254 petition be **DISMISSED WITH PREJUDICE** and stricken from the Court's docket.

It is so **ORDERED.**

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [Dkt. No. 69], GRANTING THE RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 52], AND DENYING
THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]**

Court to enter a separate judgment order and to transmit copies of

both orders to counsel of record and to the pro se petitioner,

certified mail, return receipt requested.

DATED: August 1, 2014

                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE